STATE BANK OF INDIANA (SARGEANT v.). See Case No. 12,360.

STATE BANK OF OHIO, CHILLICOTHE BRANCH OF THE, v. FOX. See Case No. 2,683.

STATE BANK OF VIRGINIA (ALDERDICE v.). See Case No. 154.

STATE INV. INS. CO. (BRUGGER v.). See Case No. 2,051.

## Case No. 13,324.

STATE NAT. BANK v. FREEDMEN'S SAVINGS & TRUST CO.

[2 Dill. 11;[1] 10 Am. Law Reg. (N. S.) 786.]

Circuit Court, D. Missouri. 1871.

BANKS — CERTIFICATE OF DEPOSIT — FORGED INDORSEMENT.

A certificate of deposit payable to the order of depositor on the return of the certificate was issued by bank A. to T. D., who could not write. The bank took his mark on its signature book, and wrote a description of him opposite. Shortly afterwards the certificate was stolen from T. D. and presented to bank B. by a stranger who gave his name as T. D., and said he could not write. Thereupon the cashier of bank B. endorsed the certificate to his own order with the name of T. D. to which the stranger made his mark, and an employé of bank B. added his signature as "witness to mark." The cashier then endorsed the certificate and sent it through a correspondent to bank A., which thereupon paid it, and the money was handed over to the stranger. Thereafter the real T. D. appeared at bank A., and on discovery of the forgery bank A. paid him the amount and brought suit against bank B. to recover the payment on the forged endorsement. Held, that bank A. had a right to rely on the identification of T. D. by bank B., and could recover.

On the 7th day of November, 1870, Tim Dunivan deposited in the State National Bank at Keokuk, Iowa, nine hundred dollars, and received therefor a certificate of deposit, of which the following is a copy: "$900. State National Bank, Keokuk, Nov. 7, 1870. Tim Dunivan has deposited in this bank nine hundred dollars, current funds, payable to the order of himself hereon in like funds on the return of this certificate. In currency, $900. (No. 4991.) G. W. Horton, for Teller." Tim Dunivan was unable to write, and therefore placed upon the signature book of the bank his mark, the officers of the bank at the same time writing his description opposite the mark on the book. Dunivan went off on the river, and on or about the 20th of November the certificate was stolen from him. About the 1st of December a man presented the certificate at the counter of the Freedmen's Savings & Trust Company, and asked the cashier to cash it. The cashier refused, on the ground that the person presenting it was a stranger to him, but offered to take it for collection. To this the stranger acceded. The cashier asked him if his name was Tim Dunivan. He replied, "Yes." He then asked him if he could write his name, and receiving an answer in the negative, the cashier himself wrote the following endorsement: "Pay to the order of W. N. Brant, cashier. Tim X Dunivan,"—the party himself making the cross-mark. The mark was then witnessed by W. P. Brooks, a man who did odd jobs about the bank, as follows: "Witness to mark, W. P. Brooks, St. Louis, Mo." Neither Mr. Brant nor Mr. Brooks was acquainted with the man offering the certificate. The certificate was then endorsed by Mr. Brant, as follows: "Pay Bower, Barclay & Co., for collection. acct. of W. N. Brant, Cashier," and forwarded to Bower, Barclay & Co. for collection, by whom the certificate was collected and the proceeds remitted to Mr. Brant, and by him paid to the party who had left the certificate for collection. On the 22d of December, Tim Dunivan appeared at the bank in Keokuk, and claimed that the endorsement was a forgery, and that he had never received the money. Thereupon the Keokuk bank paid him the amount and brought this suit against the Freedmen's Savings & Trust Company to recover the amount paid through its correspondent. The evidence adduced at the trial disclosed the above facts. It further appeared that the cashier of the Keokuk bank, when the certificate was presented from Bower, Barclay & Co., simply looked at the back of it, and remarked that "he guessed it was all right—the endorsers were good." No information was given by plaintiff's officers to Bower, Barclay & Co., or to defendant, as to the description of Tim Dunivan which had

[1] [Reported by Hon. John F. Dillon, Circuit Judge. and here reprinted by permission.]

22 FED. CAS.—72

been placed upon its books: and there was no evidence as to when the plaintiff gave notice of the forgery, except that the cashier of defendant testified that notice was not given him until some time after the discovery.

Noble & Hunter, for plaintiff.

E. W. Pattison, for defendant.

[2] [Conceding that Brooks's attestation meant that he knew the man signing to be Tim Dunivan, it does not follow that he knew him to be the Tim Dunivan to whom the certificate was issued. All the cases we have been able to find with reference to the force of an attestation are cases where the question has arisen upon the effect of proof of the handwriting of a dead or absent subscribing witness. Many of these cases go to the length of holding that, where such subscribing witness's signature is proved, this is not only prima facie evidence that the name signed to the instrument as a party is genuine, but of the identity of the party sought to be charged if the name which is signed is his. On the contrary, there is a respectable number of cases which hold that the identity must be proved aliunde. · Of these latter we cite Whitelocke v. Musgrove, 1 Cromp. & M. 511; Middleton v. Sandford, 4 Camp. 34; Parkins v. Hawkshaw, 2 Starkie, 239; Nelson v. Whittall, 1 Barn. & Ald. 19; and American cases, Robards v Wolfe, 1 Dana, 155. See, also, 2 Phil. Ev. 505–507. But all these were cases of actions on the instruments, and the utmost extent to which they go is that, when the attesting witness's signature is proved, identity of the party executing the instrument with the party sought to be charged will be presumed, subject, however, to be rebutted by showing that it was really executed by a different person. But it is claimed here that the mere fact that there is an attesting witness will authorize plaintiff to presume that the man signing the certificate is their customer, to whom they issued it, whose mark is on their books, and whose description is there too; so that they need trouble themselves no more about it. It may be remarked that actual identification here is impossible. The most that Mr. Brooks could say was that he knew the man writing to be a Tim Dunivan. See Graves v. American Exch. Bank, 17 N. Y. 205. Why should the fact that this depositor signed by a mark change the duty of the plaintiff, or relieve it of any exercise of care? It has been held that a mark is an endorsement. George v. Surrey, Moody & M. 516 (without attestation). So the initials, "P. W. S." Merchants' Bank v. Spicer, 6 Wend. 443. So the figures. "1, 2, 8." Brown v. Butchers' & Drovers' Bank, 6 Hill, 443. Now, if these are all signatures, and the bank is bound to know the signatures of its customers, as the authorities show (Smith v. Mercer, 6 Taunt. 76; Stout v. Benoist, 39 Mo.

277, and many other cases), why should it not be bound to know initials, or figures, or a mark, as well as a name? That·the former are more easily counterfeited than the latter should increase the vigilance of the bank issuing the certificate, but does not change the law. Suppose the deposit had been made in the usual way and a passbook given, and somebody had drawn a check, signed it "Tim X Dunivan," his mark, and it had been attested. Would not the bank have to bear the loss if it paid it? Could it recover it back from the holder of the check?

[(2) Conceding that Brooks's attestation meant that he knew the man, it does not follow that plaintiff had a right to presume that W. N. Brant, cashier, knew the man to be Tim Dunivan, or that he guaranteed the endorsement in any way. He (Brant) had a right to depend on the fact that plaintiff would know its own customer. We insist that there was negligence on the part of plaintiff in this: (1) It should have taken some pains to ascertain whether its customer had really endorsed the certificate. (2) It should have notified defendant of the forgery promptly. This it did not do. Mr. Morse, in his work on Banks and Banking (page 300), expresses this very succinctly: "It is unquestionable that, if the payee has, upon the strength of the payment, released any security, or abandoned or lost any possible safeguard or protection from loss, it is too late for the bank to undo the error at his expense." And further he says: "Where the bank seeks to recover from the payee, it is held rigorously to make the discovery of the forgery, and to give notice of it to the holder with great promptitude." Indeed, in such a case as this the doctrine laid down in Cocks v. Masterson, 9 Barn. & C. 902, and other cases which have followed it (Wilkinson v. Johnson, 3 Barn. & C. 428; Price v. Neal, 3 Burrows, 1354, and other cases), does not seem too strong. The very mildest case involving this principle is that of Canal Bank v. Bank of Albany, 1 Hill, 292; yet there it is held that reasonable diligence in giving notice is necessary.] [2]

Before TREAT and KREKEL, District Judges.

TREAT, District Judge (charging jury). The case you are trying turns mainly on the question of negligence. The fact that defendant is a corporation is in proof. You have then the plaintiff a corporation and the defendant a corporation.

The rule of law usually is, that where a certificate of deposit is issued by a bank, and it comes back to the bank issuing it with the endorsement of the depositor through the hands of bona fide innocent parties, the endorsement being forged, the bank paying

the deposit certificate must lose it; for they are presumed to know the signatures of their customers, and the bank issuing the certificate has the means of verifying the signature.

This is a different case. Here was a person who could not write. The bank gave him the certificate and took his description. The ordinary mode, where a person signs by his mark, is to have him identified, so that a piece of paper coming back to the Keokuk bank through respectable institutions, with the depositor's mark on the back of it witnessed by another party, the bank issuing tne certificate would have the right to suppose that the bank sending the certificate had so identified the man making his mark. The witness's signature is proven. Mr. Brooks himself says he signed it. The simple fact, then, that the paper comes back to the bank at Keokuk with a mark witnessed by Mr. Brooks, which means that he knew Mr. Dunivan to be the person who made that mark, is sufficient to justify the Keokuk bank in paying the draft. The jury found a verdict for the plaintiff.

Judgment accordingly.